RAYNOLDS (DE FLOREZ v.). See Cases Nos. 3,742 and 3,743.

---

## Case No. 11,597.

### In re RAYNOR.

[11 Blatchf. 43;[1] 7 N. B. R. 527; 1 Am. Law Rec. 736.]

Circuit Court, N. D. New York. March 18, 1873.

BANKRUPTCY— NON-PAYMENT OF COMMERCIAL PAPER — CONTINUOUS ACT — PETITION —SIGNED BY ATTORNEY.

1. Under section 39 of the bankruptcy act of March 2, 1867 (14 Stat. 536), the non-payment of commercial paper at maturity, and the continued neglect to pay it, are a continuous act of bankruptcy, so that the non-payment of it for more than fourteen days, may be alleged as an act of bankruptcy. committed within six months before the filing of the petition, although the first fourteen days after maturity expired more than six months before the filing of the petition.

[Cited, contra, in Re Brewer & Bemis Brewing Co., Case No. 1,850.]

2. It is sufficient if a petition in involuntary bankruptcy be signed and sworn to by an attorney of the petitioning creditor, duly authorized thereto, and it is not necessary that it should be signed or sworn to by the petitioning creditor in person.

[Cited in Re Simmons, Case No. 12,864; Re Donnelly, 5 Fed. 787; Wald v. Wehl, 6 Fed. 167.]

[In review of the action of the district court of the United States for the Northern district of New York.

[In the matter of Jacob Raynor, a bankrupt.]

William C. Ruger, for petitioning creditors. James Nixon, for bankrupt.

WOODRUFF, Circuit Judge. On the 7th of May, 1872, Horace B. Claflin, and others, composing the mercantile firm of H. B. Claflin & Company, of the city of New York, by Ruger, Wallace & Jenney, their attorneys, filed their petition in the district court, as creditors of Jacob Raynor, praying that he be adjudged bankrupt. The petition stated, that, within six months next preceding the date thereof, the said Jacob Raynor committed an act of bankruptcy, within the meaning of the "act to establish a uniform system

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

of bankruptcy throughout the United States," approved March 2, 1867, to wit, in that the said Jacob Raynor, being a merchant, has suspended payment of his commercial paper, and has not resumed payment thereof within a period of fourteen days, the said commercial paper being a certain promissory note of which a copy is given in the petition. The note mentioned is dated November 30, 1870, for five hundred dollars, payable on the 1st of June, 1871, with interest after January 1, 1871, to the order of James Nixon, and by him endorsed, and, before the maturity thereof, transferred to the petitioners by the said Raynor, for merchandise sold and delivered by the petitioners to him. No other act of bankruptcy is stated. The petition is signed, "H. B. Claflin & Co., by Ruger, Wallace & Jenney, attorneys," and is sworn to by one of the said attorneys, who, in addition to the usual verification, swears that the said attorneys are authorized by the petitioning creditors to file the said petition. An affidavit of one of the said attorneys was also annexed, to establish the act of bankruptcy, and prove the debt due to the petitioners, and the formal protest of the said note, and stating that there are several executions against the said Raynor, in the hands of the sheriff of Onondaga county, to the amount of about $2,500, which executions have been levied upon the said Raynor's property, and further stating, that the said Ruger, Wallace & Jenney are authorized by the said H. B. Claflin & Co., the petitioning creditors, to make the said affidavit and institute these proceedings in bankruptcy. An order to show cause was thereupon made by the court, returnable on the 28th of May, 1872. This order, together with a copy of the petition, was served upon Raynor personally, on the 20th of May. On the 28th, the hearing was adjourned to a subsequent day. An attorney, acting professedly for Raynor, consented to such postponement, but, as his appearance is stated to have been through a mistake, and without authority from Raynor, it is claimed that the proceedings should be considered as they would be if there had been no appearance whatever by Raynor; and, without inquiring what effect, if any, should be given to a formal appearance by attorney, the case will, for the present, be treated as if the debtor did not appear on the return day of the order, and the court had adjourned the proceeding until the 25th of June, 1872. On the last-named day, the matter was brought to a hearing. The debtor did not appear in person, or by attorney, and he was, by the court, adjudged bankrupt, and was ordered to make and deliver a schedule of his creditors, and an inventory of his property, with other usual directions, and a reference to a register. The proper warrant to take possession of the property of the bankrupt was issued to the marshal, by virtue of which he took possession. Notice to creditors was issued, to meet for the choice of an assignee. Edgar P. Glass was duly nominated, approv-

ed by the court, and appointed assignee, and, on the 6th of August, 1872, the register assigned to him the property and estate of the bankrupt. The assignee received from the marshal possession of the store and merchandise of the bankrupt, and proceeded to advertise the goods for sale at auction, in the discharge of his duties, as assignee. No question is made of the due regularity of these proceedings, except in the particulars hereinafter specified.

On the 27th of August, the bankrupt applied for and obtained, in the district court, an order to show cause why all proceedings should not be set aside and vacated, upon the ground, that the act of bankruptcy set forth in the petition of the creditors was not committed within six months before the filing of their petition; and, on the 24th of September, the court set aside and vacated the adjudication of bankruptcy, and all subsequent proceedings, unconditionally, making no provision as to costs or expenses, or, in any wise, for the indemnity of any of the parties or officers, or of the assignee. The petitioning creditors have come, by petition, to this court, for a review and reversal of the last-named order.

1. The sole ground upon which the order setting aside the proceedings was moved in the district court, as recited in the order to show cause, is, that the act of bankruptcy specially mentioned in the petition of the creditors was committed more than six months before the petition was filed. The note set out in the petition, the suspension of payment and the continued non-payment whereof is particularly specified, became payable June 4, 1871, and the petition was filed May 7, 1872. This gives rise to the question, whether the continued non-payment of commercial paper by a merchant or trader, after suspension of payment thereof by suffering it to go to protest, is a final, definite, and single act, so completed, at the end of fourteen days thereafter, that it cannot, after the lapse of six months, be made the basis of an adjudication of bankruptcy (section 39). There is no claim here that the debtor was not insolvent, no claim that the non-payment was not for want of means to pay, and the affidavits showed that the debtor had committed other acts of bankruptcy, even to suffering his property to be taken on execution, without assets sufficient to pay his debts. The claim of the debtor rested on the single ground, that, because the note mentioned in the petition became payable more than six months before the petition was filed, the petition, while it averred that an act of bankruptcy had been committed within six months, showed, on its face, that the act relied upon was committed more than six months before that filing.

The question is not an open one in this circuit. It has more than once been held here, that non-payment of the commercial paper of a merchant or trader at maturity, and the

continued suspension and neglect of payment, are a continuous act of bankruptcy. The debtor, in such case, is in a state of suspension and non-resumption of payment. His duty to pay is just as definite on any day after the day on which his commercial paper is, by its terms, payable, as it is on that day, and, on any such day, he is in the very position, as between him and the creditors, of neglecting his duty, suspending, keeping in suspense, and not resuming payment. Whether his continued suspension and non-resumption of payment be termed a continuous act of bankruptcy, or be regarded as daily successive acts of bankruptcy, is not material. So long as it continues, the creditors may avail themselves of it, as an act of bankruptcy committed as truly within the preceding six months, as on the day on which the debtor first violated his commercial obligations. I cannot doubt that this is the proper construction of the bankrupt act, and this construction has been heretofore approved, on the review of the like construction given to the act by the district judge of the Southern district. It is in accordance with the opinion of the learned circuit judge of the Sixth circuit in Baldwin v. Wilder [Case No. 806]. I am, therefore, compelled to hold, that the ground upon which the proceedings were set aside did not warrant the order.

2. On the argument of the review herein, and upon an intimation from the court to the effect above stated, another ground for sustaining the order vacating the proceedings was urgently pressed upon the attention of the court, which does not appear to have been suggested in the court below, or to have been passed upon there. This ground, it is claimed, goes to the jurisdiction of the district court to entertain the petition, or make any adjudication thereon. The petition herein was not signed or sworn to by the petitioning creditors, or either of them, in person, but by their attorney, expressly authorized to institute the proceeding and file a petition on their behalf. This, it is now insisted, is not authorized by the law, and gave the district court no jurisdiction to adjudge the debtor bankrupt.

Waiving, for the present, any question of the propriety of entertaining, under the form of a petition of review, in this court, questions not raised and passed upon in the district court, it seems obvious, that, if the proceedings set aside were coram non judice and void, for want of jurisdiction, it would not benefit either party to reverse the order merely because the ground upon which it proceeded was disaffirmed. I, therefore, consider whether the objection now raised is well founded.

The consequences of a holding in conformity with the claim now made in behalf of the debtor, do not furnish a conclusive reason for denying its force; but, in giving a construction to a statute which is susceptible of more than one interpretation, such

consequences may very properly assist in ascertaining the intent of congress, and, so, in determining the meaning of the act. If, then, the petition here did not give the district court jurisdiction, the proceedings might be begun, due notice thereof be given to the debtor, he, by his silence and inaction, give passive acquiescence, the assignee proceed to sell and convey the debtor's property, real and personal, receive the proceeds and distribute them, institute suits for the collection of debts due to the bankrupt, and, finally, render and settle his accounts, and even the bankrupt receive a discharge. Now, if the objection that the district court had no jurisdiction, because the petitioning creditor did not sign the petition, is sound, the discharge of the debtor is void. He, if he have not taken such discharge, may reclaim all his property, may hold all who have intermeddled therewith tort-feasors, and liable to him in damages to the full value of property taken, debtors of the bankrupt, being sued by the assignee, may defeat a recovery, by impeaching his title, and no purchasers of the real estate of the bankrupt, or their heirs or grantees, would be safe until adverse claims were barred by the statutes of limitation. It is true, that a short answer may be given to all this—let all parties who act in faith of a judicial proceeding, see to it that such proceeding conforms to the law. The answer is, however, as unsatisfactory as it is short, when applied to a remedial statute, and a proceeding under it, of which the debtor has full notice—a proceeding intended to be made convenient, summary, and beneficial to all parties, for the attainment of the highest equity, an actual and equal distribution of an insolvent debtor's property to his creditors, and, if he be honest, a discharge of himself from the heavy burthen of obligation which he is unable to satisfy.

Again, such a construction is harsh and inconvenient to creditors, without being of the slightest conceivable benefit to debtors. The very first step, based upon the petition, is to give the debtor an opportunity to be heard upon the question whether he shall be adjudged bankrupt. On that hearing, so long as it appears that, in fact, the petitioning creditors authorize the institution of the proceeding in their behalf, and so become liable for costs, or other resulting responsibility, it is not of the slightest importance to the debtor, who signs the petition. As in the nature of a pleading, the petition should set forth all facts material to the claim made by the creditor to an adjudication, so that the debtor may be distinctly apprised what he is called upon to answer; and that is the reason for specific and definite allegations in the petition. The matter of signing and authentication, on any ground other than above suggested, is purely formal and unimportant to any right of the debtor.

Once more. In this widely extended coun-

try, where facilities of travel and transportation have made commercial intercourse the daily and constant habit, between parties carrying on business at places thousands of miles removed from each other, creditors are, by the bankrupt law, required to seek their debtors at their homes or places of business. The exigencies which the bankrupt law contemplates, and which entitle creditors to proceed in bankruptcy against such debtors, are often, very often, of sudden occurrence, and require instant application to the bankrupt court. Creditors may easily clothe their attorneys and agents with full power to act for them in all circumstances, for the collection of demands, and by such application to the bankrupt court as may be proper, and yet, if no such action can be taken until, by correspondence or otherwise, the formal papers can be prepared, transmitted, signed, sworn to by the creditor in person, and returned, in many cases, no injunction can be had, nor other measures taken, to restrain instantly inchoate or contemplated fraudulent dispositions of property, its fraudulent removal beyond the reach of creditors, or other fraud, until it is too late to be of any service whatever. To this should be added, that, in a large proportion of the cases, the agent on the spot knows far better the truth of the allegations which the petition should contain than the creditor himself. It is difficult to suggest a reason for increasing the expense, trouble, and embarrassment of the creditor in pursuing so useful a remedy. So, also, creditors often conduct their business largely through agents, creditors are sometimes required to be absent from their homes, sometimes temporarily abroad, and, in such cases, they are, by the construction claimed, practically cut off from the privilege of pursuing their fraudulent or insolvent debtor by the just and equitable enforcement of the bankrupt law. If some respect may be had to creditors resident abroad, the considerations sustaining the right to proceed under this law by their agents or attorneys near the residence, or place of business, of their debtors, become still more urgent.

What, then, is the foundation of this claim? It rests on the language of the thirty-ninth section, and upon a few words of that section: "Shall be adjudged a bankrupt, on the petition of one or more of his creditors." No other terms of the act are invoked as expressly prescribing the action of the creditor in person in the matter. In my opinion, that language has no such necessary or probable import. It should be construed as similar language is used in the whole field of legislation, and in the terminology of courts; and, in these, the maxim, "Qui facit per alium facit per se," is, in civil matters, of almost universal application. The deed, agreement, or covenant of A. B. is his deed or act, although executed or made by his agent or at-

torney, and it not only may, but must, be so described. Even a tortious act may be done by an agent, and yet it is appropriately described as the act of the principal. In legal proceedings which are closely analogous to, or, rather, of the identical nature of, those under consideration, the bill of complaint of the person seeking redress is the "bill of complaint of the complainant," and yet it is authenticated by his solicitor. The declaration of the plaintiff in a suit at law the plaintiff himself rarely sees. So, of summary petitions of various kinds, in proceedings at law and in equity, under statutes and at common law. They are called the petitions of the party, the proceedings are had or taken on his petition, and yet they are only his because he authorized them, or because they are presented on his behalf. Illustrations almost without number could be found of the use of language like "the petition of a creditor," which import no more than that it is on his behalf or by his authority. I think that congress did not intend to create a restricted meaning to the phrase, limiting it to the personal act of the creditor. It has no such necessary meaning, because, what is done by an agent is, in law, done by the principal. It has no such restricted meaning, according to the common and prevailing employment of such terms in the law. To give it such a restricted meaning would result in manifold inconveniences and evils, some of which have been alluded to, and would often defeat the beneficial and just purposes of the law.

It is, however, urged, that the supreme court of the United States have given a practical and authoritative construction to this language, by exercising the power conferred by the act to make rules, and, by those rules, prescribing forms of proceeding which import the signing of the petition, and the verification thereof, by the petitioning creditor in person. If they have done so, their construction of the law concludes this court. Section 10 of the act, No. 32 of the orders in bankruptcy, and form No. 54.

There is no express provision in the rules or orders in bankruptcy, in any degree inconsistent with the views above expressed.

The form of petition prescribed (No. 54) involves no question by whom it is to be signed or authenticated. It is, in that respect, like any bill in chancery, or any petition in a summary proceeding, or petition collateral to a pending suit, or of any ordinary character—"the petitioner states," or "represents," or "shows;" or, "your orator represents," or "states," or "shows" to the court; or, "your orator," or "the petitioner" further "represents," or "states," or "charges," or "admits," or "denies;" or "your orator" or "your petitioner" will "ever pray," &c. But, the place for the signing is indicated by blank lines, with the word "petitioner" appended, as descriptive of the signer, and the oath to the petition begins, "I, ——, the petitioner

above named," and ends with the like blank lines, with "petitioner" appended. If there were nothing more than this, these blank spaces, thus supplemented, would furnish very narrow ground upon which to rest a decision of great practical importance. These blanks may be filled by the words "A. B., attorney (or agent) for the" petitioner, or with the name of the petitioner, "by A. B., his agent and attorney," and no violence will be done to any form, nor to any prescription in the law or the rules.

On recurring to the rules themselves, it seems to me that all foundation for an argument founded on the forms disappears. The thirty-second of the rules or orders, which adopts the forms, expressly directs, that they "shall be observed and used, with such alterations as may be necessary to suit the circumstances of any particular case." If, therefore, there is nothing in the bankrupt law itself which requires that the petitioning creditor shall sign and authenticate the petition in person, then the orders in bankruptcy and the forms prescribed do not require it, and the blanks may be filled by the name of the attorney or agent of the petitioner, or with the name of the petitioner, "by A. B., his attorney and agent."

It is suggested, that, because congress, when prescribing the requisites of the proof of debts by creditors, in section 22, make express provision for the oath of an agent or attorney, when the creditor is absent or prevented from testifying, it is inferrible that it was not intended that an agent should sign, verify, or present a petition, because the act does not say so in terms. The act does not in terms say that the petition shall be signed or verified at all. When prescribing proof of debts, congress were directing the mode of exhibiting ex parte evidence which should entitle a party to receive a part of the estate in distribution; and section 22 is stringent and exact in specifying the oath which must be taken, and what it shall embrace. Having made such requirement, and recognizing the fact that creditors may often be compelled to make the proof by agents, they provide for the oath to be taken by such agents. This, to my mind, shows nothing in regard to the requisites of a petition, as to which the act itself specifies no oath whatever. An express provision touching the proof of debts by agents, the proceeding being ex parte, to my mind, rather sustains than weakens the presumption, that, when the proceeding is inter partes, so that the debtor must be first heard before any adjudication can be had, no limitation or restriction of the proceeding to the personal act of the petitioner is to be implied.

Several cases from the district courts are cited by counsel, in which it has been said, in substance, that a petitioning creditor must sign and verify the petition, and that it may not be done by agent or attorney, although expressly authorized. Hunt v. Pooke [Case

No. 6,896]; In re Muller [Id. 9,912]; In re Butterfield, 6 N. B. R. 257, in which latter case, however, the actual decision only imports, that authority to file a petition does not pertain to a mere retainer of attorneys at law in general. Whether those courts would hold, that the requirement went to the jurisdiction of the court, and that a defect in this respect would render the whole proceeding, if carried to full consummation, coram non judice and void, is not quite clear. It is not easy to see that their views of the construction of the act would stop short of that. In the Southern district of this state, and in the district of Connecticut, the contrary has, I understand. been uniformly held. My own conviction is, that the opinions in the cases referred to proceed upon too narrow a view of the subject. and I cannot resist the conclusion, that, when the agent is clothed with full authority. and is able to present the proper authentication of the petition required by the forms, such petition should be entertained, although the petitioning creditor does not in person sign or swear to the petition.

The order under review must, therefore, be reversed.