## Case No. 7,303.

Ex parte JEWETT.

In re MORRIS.

[2 Lowell, 393;[1] 11 N. B. R. 443; 12 N. B. R. 170.]

District Court, D. Massachusetts. Feb., 1875.

LOWELL, District Judge. The petition of creditors against the supposed bankrupt was made and filed, and before adjudication the respondent called a meeting of his creditors, at which a resolution for composition was passed; and the hearing has now been had upon the acceptance thereof. The original petition was defective in this, that by a clerical mistake it averred that the petitioners constituted the requisite number and amount of the creditors of the said A. B., naming one of the petitioners, instead of the respondent. This defect was overlooked until now, when it is objected that without a distinct and accurate allegation on this head there is no jurisdiction. A recent decision of an able and learned judge was cited in support of this position: In re Rosenfields [Case No. 12,061]. Notwithstanding my respect for that decision, and after careful consideration, I cannot admit that the number and amount of petitioners has any thing to do with the jurisdiction of the court. Congress has very carefully provided that such a want of parties shall be taken advantage of as a strictly dilatory plea, and be disposed of in a summary way, not for the purpose of ascertaining the jurisdiction of the court, but the sufficiency of the plaintiff's petition, which is a very different thing. If the court should decide wrongly on that point, its decision would bind all the world.

The district court has jurisdiction in bankruptcy of every person residing within the district, who owes three hundred dollars of provable debts; and when a paper which purports to be a petition in bankruptcy, and which alleges such residence and indebtedness, is filed, and an order of notice has been duly served, there is and can be no jurisdictional fact remaining, if the residence and indebtedness to the extent of three hundred dollars are admitted. The court may then proceed to allow or refuse amendments, or any thing else proper for a court to do t at has undoubted jurisdiction of the subject-matter and the parties. Indeed, if due service has been made, it could properly allow those jurisdictional allegations to be amended. To put an extreme case, let us suppose that the petition distinctly averred that the petitioners were not the requisite number, &c.; the mistake of course would be clerical. but it might not be discovered, and there might be an

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

adjudication. The decree would be erroneous, but it would not be void; and no court could correct it, excepting the court in bankruptcy, either subordinate or appellate, upon a direct application for that purpose; and it would be such an error as might be amended after almost any lapse of time. The mistake here is of that sort, though not as palpable; and the motion to amend is granted, though, in my opinion, no amendment is necessary. The statute gives the debtor a right to propose a composition whenever a case in bankruptcy is pending by or against him; and the objection just considered, as well as the next in order, depend upon the proposition that a case is not pending when the court has no jurisdiction of it, which may be admitted. But when the court has jurisdiction of the subject-matter and the parties, it will not be easy to point out a defect in pleading which would prevent the case from being a case.

The second point relates to the verification of the creditor's petition. The petition was properly made by the several firms, and the signature was that of the firms; and the jurat also properly sets out the individuals who made oath. The jurat in this way comes to vary in form from the signatures. My impression is that the verification is sufficient; but I do not decide it, because, in my opinion, the case is pending whether the verification is regular or otherwise; and not only so, but the objection may be waived by the debtor, and has been waived, no question being made of the bona fides of the petition.

The next objection brings up an important practical question. The statute provides for a meeting of creditors, and requires the debtor to be present, and to answer any inquiries made of him. The debtor was present in this case, and ready to answer inquiries, but the meeting voted to proceed to the consideration of the resolution. After that had been voted, the objecting creditors declined to make any inquiries.

It was the opinion of the able and learned register, who acted as chairman of the meeting, that the statute means that the debtor shall answer any question put by the meeting, or with its consent: because otherwise it will always be in the power of a minority, however small, to work a dissolution of the meeting by protracting inquiries until the patience of the meeting is exhausted, and because a meeting imports a body entitled to govern its own proceedings. On the other hand, it is insisted by the objecting creditors that the statute is intended to protect the minority, and enable them to instruct themselves and the majority upon the expediency of the proposed composition, before it is voted on. At the argument I asked counsel to look up the English cases, and several have been furnished me; two of which had been printed, and had reached this country before our statute, which follows exactly the English law in this respect, was passed: In re Davis, 19 Wkly. Rep. 524; Ex parte Levy, Id. 586; Ex parte Mackenzie, 23 Wkly. Rep. 121. In these cases it is taken for granted that any creditor may make inquiries at the meeting. In one of them, the point was taken that a refusal to answer was no objection to the proceedings, unless the sense of the meeting was taken; and though the point was not overruled, (the court deciding in favor of the party taking that point), yet it was not noticed in the judgment, which it might well have been, if considered by the court to be sound, as it would have disposed of the matter without going, as the judgment did, into the materiality of the particular question put.

I have heretofore refused to order the examination of a debtor who had called a meeting for composition, on the ground that the statute gave a right of inquiry (though the answers would, perhaps, not be on oath) at the meeting. And it seems to be the obvious intent of the act that inquiry may be made by any person entitled to inquire. In one of the cases cited, the decision was that the debtor's solicitor might advise him whether to answer or not, and that he need not answer an immaterial question, but that a refusal to answer would be at his own risk. In another, the ruling was like that which I have referred to, that the true place for examination was at the meeting.

Upon the whole, I am of opinion that the courts ought not to take for granted that the law will be found impracticable unless by giving it a somewhat forced construction; and it is only on that assumption that there can be much ground of hesitation. There is no suggestion in the English cases that any difficulty has been found in conducting the inquiry. The matter may, perhaps, be regulated by the supreme court, by rule, and in the mean time by the district courts. I feel it my duty to overrule the opinion of the register; but if the debtor desires it, leave will be granted to call another meeting, as the point was nice and important.

[Congress has inserted in the statute a clause not found in the English act, putting upon the court the duty of ascertaining whether the composition will be beneficial to the parties concerned. After the very full discussion at the bar, and nearly two days spent in inquiring into the value of the debtor's assets, every one connected with the case conceded, I believe, that a burden has been cast upon the court that is not easily sustained of instructing parties concerning their own interests. In the absence of fraud and concealment, the question for the court seems to be, not whether the debtor might have offered more, but whether his estate would pay more in bankruptcy. There can be no other standards, because the court cannot require the debtor to make a second offer; and perhaps ought not to permit him to do so under any circumstances.

And as it is established by all experience that a man can make more out of his own assets than assignees of more general capacity than he, and entirely honest, can possibly realize, there is an undoubted margin in many cases which the debtor may save by offering less than he might offer, but more than his creditors can obtain by process of law. The English statute makes the determination of the creditors final on that point, in the absence of fraud, and I dare say it will be found that the practical application of our law must be very similar. I should certainly hesitate to decide that any small difference ought to oblige me to reverse the action of the creditors. In this case I see no objection to saying that it seems probable the debtor could have offered a little more, and yet that the creditors were wise in accepting what he did offer. There has now been a full investigation of the case, under oath, and I regret that it should be fruitless. I regret that our practice is not yet guided by the orders of the supreme court, though I intend no reflection on that overworked tribunal for not furnishing this guidance, which is likely to be more satisfactory for being made up after some experience has been obtained of the working of the law. Until they act, I shall be happy to receive the aid of the. bar in making a rule or rules on this subject. If none should be made we must trust to the good sense of the registers and of the meetings, to find a way to reconcile the apparently conflicting rights of the meeting and its members. Leave to record resolution refused. The debtor may call a new meeting, if he applies within twelve days. I fix this time because he has ten days, I suppose, to apply to the circuit court to revise this decision.][2]

A new meeting was called in this case, in accordance with the foregoing intimation of the court, and the debtors were examined; and while this was going on. the objecting creditors bought some of the debts, under circumstances stated in the following opinion of the court, and thus defeated the resolution, if the debts thus procured were to be counted. The purchaser offered publicly at the meeting to pay twenty-five per cent for all the debts, the offer of the debtor being twenty per cent.

R. Stone, Jr., for the debtor, maintained that these debts could not be reckoned in ascertaining the amount required, and cited Ex parte Cobb, 29 Law T. (N. S.) 123; Ex parte Fore Street Warehouse Co., 30 Law T. (N. S.) 624.

H. R. Brigham, for opposing creditors.

LOWELL, District Judge. At the former hearing, I thought and said that the evidence tended to show that the debtor might have offered a little more than he did, but intimated that it might require a greater discrepancy, or some evidence of fraud, to make it my duty to refuse a resolution which the creditors had voted. Before or at the second meeting, and before the vote was put, the objecting creditors bought up enough of the debts to enable them to defeat the resolution.

It is insisted that the debts thus bought ought not to be reckoned, or permitted to be voted upon, at the meeting. The English cases cited show that, where debts have been purchased in order to carry a composition, the resolution will be held to be tainted with fraud. I do not think that the like rule can always be applied to the purchase by a dissenting creditor. In the one case, the evidence tends, almost conclusively, to prove that there must be some motive at work besides the interests of the creditors; for instance, where the composition offered was 2s. 6d., and the purchase was made at 10s., the court had a right to infer that there was some secret contract to reimburse the purchaser. Whether there were or not, the transaction amounted to a preference of the creditor whose debt was bought. The vote of assent was virtually his, and he had been paid more than the others. Such cases are common, and are held fraudulent in all courts, whether they relate to discharges in bankruptcy, to compositions at common law, or in any other way in which such a question can be brought up.

But I have never known a case in which a creditor has been bribed not to assent to a debtor's discharge, or not to sign a composition deed. There is no very apparent occasion or inducement to fraud on that side, though, possibly, there may be oppression.

I do not say that clear evidence of hostility or spite, for the indulgence of which an enemy may be willing to pay, would not authorize the rejection of his vote. But there is no such presumption of an improper notice. as exists in the cases cited, because its existence is very improbable.

Looking at the facts here, it seems probable that the purchaser of these debts may have supposed that the debtor's assets would fairly pay all that he has chosen to give for these debts. That agrees with the impression which the evidence left upon my own mind; and, if this is so, I see neither fraud nor oppression in the action of the creditor. I said in my former opinion that a debtor appears to have under the statute a margin between what he can realize from his assets and what an honest and skilful assignee in bankruptcy can obtain; and if the creditors can fairly manage to defeat the debtor's attempt to realize this margin, thinking, perhaps, that they shall thus secure it for themselves. I cannot hold that to be a reason for rejecting their votes. It is their property, after all, that he is saving for himself.

[2] From 11 N. B. R. 443.]

It was argued that, by section 22 of the bankrupt act (Rev. St. § 5077), no debt is provable which is procured for the purpose of influencing the proceedings in bankruptcy, because the creditor must swear that he has not procured it for that purpose; and that we ought to adopt the analogy in proceedings for composition, because those creditors only are to vote at the meeting whose debts are provable.

I have known very few cases, either under the bankrupt act or the law of Massachusetts. from which this form or oath was borrowed, which have touched this matter. I do not know what it means. I see nothing objectionable in itself in a person's buying a debt for the sake of influencing the proceedings, excepting it be in some such way as has been already referred to; that is, to vote for the bankrupt's interests, without regard to those of his creditors. I do not believe the oath has had the least effect upon the settlement of cases in bankruptcy, nor do I consider it to apply to resolutions for composition. That debts may be assigned pending the proceedings in bankruptcy, is settled; and it is taken for granted as applied to compositions in the English cases. This being so, I think some illegal motive should be shown. beyond the mere desire to defeat the composition upon the ground that it is not for the best interest of the creditors to accept it.

Motion to record resolution denied.