## *In re* DONNELLY and HUGHES, Bankrupts.

(*District Court, D. New Jersey.* January 8, 1881.)

1. BANKRUPTCY—ATTACHMENT—CONTESTING ADJUDICATION.

   The creditor of an involuntary bankrupt, who has obtained a preference over other creditors by proceedings in attachment against his debtor, will be allowed to come in by petition and contest the validity of the adjudication in bankruptcy.

2. SAME—JURISDICTION—DEFECTIVE VERIFICATION.

   The failure of a notary to affix his notarial seal to the verification of a creditor's petition, and the proofs of debts of such creditors in a case of involuntary bankruptcy, will not defeat the jurisdiction of the court.—[ED.

In Bankruptcy. On application to set aside bankruptcy proceedings.

*B. F. Sawyer*, for creditor Willard E. Dudley.

*John Schomp*, for assignee and petitioning creditors.

NIXON, D. J. This is an application to the court to vacate and set aside the adjudication of bankruptcy made in the case for lack of jurisdiction.

It appears that the alleged bankrupts, Donnelly & Hughes, carrying on the business of butchers in the city of Paterson, New Jersey, on the eleventh day of July, 1877, purchased of the petitioner, Willard E. Dudley, at Jersey City, 27 head of cattle, at the price of $1;941.70, paying for the same in their checks, payable some days after date; that the cattle were driven over to the city of New York and slaughtered, and sold in the Washington market, on the next night after the purchase, to various purchasers, for such prices as could be obtained for the same; that the said Dudley, being advised of these proceedings before the proceeds of the sale

of the slaughtered animals had been paid over to the bankrupts, to-wit, on the thirteenth of July, 1877, caused a writ of attachment to issue out of the supreme court of New York against Donnelly & Hughes, directed to the sheriff of the city and county of New York, who subsequently made a return that by virtue of the said attachment he collected certain moneys that appeared to belong to the debtors, Donnelly & Hughes; that whilst holding the same a judgment was obtained by the plaintiff in attachment, in which a writ of execution was issued September 20, 1877; that, before he paid, said moneys to the plaintiff, one John P. Brothers claimed that the defendants had been adjudicated bankrupts, as of' the twentieth of July, 1877, and that he had been duly appointed assignee in bankruptcy, and that, as such assignee, demanded all the moneys in his hands which he had collected in said attachment proceedings; that the said Brothers afterwards made application to the court for an order upon the sheriff requiring him to pay over said moneys, and that, pending the said application, the sheriff paid into the court $2,130.08, the amount of the judgment in attachment, and the accrued interest to the date of said payment, November 22, 1877.

It further appears that Judge Lawrence decided that the assignee was entitled to the money as assets of the bankrupt's estate; that an appeal was taken to the general term from his decision; but, before any hearing upon the appeal, the same was withdrawn by consent, and the respective parties entered into a written agreement that out of the moneys in controversy there should be first paid to Dudley, the petitioner, the sum of $330 for the costs and expenses of the attachment proceedings, and that the residue thereof, amounting to $1,800.08, should be paid to Brothers as the assignee of Donnelly & Hughes; but the said payments were made upon the express understanding and agreement "that the arrangement should in no manner or way prejudice any rights, claim, or ownership which the plaintiff, Willard E. Dudley, may have upon or to the said $1,800.08," and upon the stipulation on the part of the assignee that the question of the

ownership of the said money may be determined by motion or rule, made by or on behalf of the said Dudley, in the district court of the United States for the district of New Jersey, and that the assignee should waive any objection to the right of the court to determine it summarily.

On the sixteenth of April, 1878, Dudley filed his petition in this court, setting forth the foregoing facts, and praying that the assignee show cause why he should not pay the said $1,800.08 to the petitioner.

The assignee answered the petition, claiming the right to retain the money or assets of the bankrupt estate for the benefit of the general creditors. Evidence was taken, upon a reference to the register having the bankruptcy proceedings in charge; but before the case came before the court for hearing upon the merits, to-wit, November 30, 1880, the petitioner filed another petition here, setting up that Brothers had no claim upon the fund, for the reason that he was not the assignee of Donnelly & Hughes, the adjudication in bankruptcy against them being void for want of jurisdiction of the court over the case. It is insisted that this is a jurisdictional matter, and as such takes precedence of all other matters, and that it may be raised at any time by any one who is party to the bankruptcy proceedings. This seems at once to suggest the question whether a creditor of a bankrupt, who has obtained a preference over other creditors by proceedings in attachment against his debtor, will be allowed to come in by petition and contest the validity of the adjudication in bankruptcy. Such a question is decided by ascertaining who are parties to a creditors' petition. Some of the bankrupt courts have held that only the petitioning creditors, on the one part, and the bankrupt on the other, are properly parties to the proceedings, (see *Karr* v. *Whittaker*, 5 N. B. R. 123; *Boston, H. & E. R. R.* 5 N. B. R. 232; *In re Bush*, 6 N. B. R. 179;) while others have maintained that an involuntary petition partakes of the nature of a proceeding *in rem*, in which all the creditors of the bankrupt have a direct interest, and hence are entitled to be heard whenever they can satisfy the court that their rights as creditors are to be affected by

the proceedings. See *In re Boston, H. & E. R. R.* 6 N. B.
R. 209; *Fogerty* v. *Ginty,* 4 N. B. R. 451; *In re Derby,* 8 N.
B. R. 106. I think the latter to be the better opinion, and
that the proceeding in this case is maintainable by the at-
taching creditor, whose lien is divested by the adjudication
by the express terms of the law.

Various grounds are alleged in the petition, and were urged
in the argument at the hearing, why the proceedings should
be dismissed for want of jurisdiction by the court, but only
one seems to have been urged with confidence by the counsel
for the petitioner, to-wit, that the creditors' petition in bank-
ruptcy, and also the debts of the petitioning creditors, were
verified before a notary public, and that the notary failed to
affix to the deposition and proofs his notarial seal. It might,
perhaps, be a sufficient answer to the objection to say that
the affidavits and proofs were not taken until the month of
July, 1877, and that the congress of the United States, on the
fifteenth of August, 1876, (19 St. at Large, 206,) passed an
act authorizing notaries public "to take depositions, and do
all other acts in relation to taking testimony, to be used in
the courts of the United States, [and] to take acknowledg-
ments and affidavits, in the same manner and with the same
effect as commissioners of the United States circuit courts
may now lawfully take or do." The bankrupt law, as orig-
inally enacted, provided that the petition and inventory, in
voluntary cases, should be verified by the oath of the peti-
tioner, taken either before the district judge, or the register,
or a commissioner of the circuit court. It did not, in terms,
require any verification of the petition in involuntary cases;
but the supreme court, in preparing the terms of proceedings,
and in analogy to the provisions of the act in voluntary
cases, required a verification of an involuntary petition by
the same officers.

The twentieth section of the amendment of June 22, 1874,
authorized notaries public to take *proof of debts* against the
estate of the bankrupt, stipulating, however, that such proof
should be certified by the notary and attested by his signa-
ture and official seal. The above-recited act of August 15,

1876, greatly enlarged their powers, and from the terms of the section it is quite manifest that congress designed to confer upon them the same authority, in regard to taking testimony and affidavits to be used in the courts of the United States, as was then possessed by the commissioners of the circuit court. This statute, unlike the act of 1874, is silent as to such officers attesting their acts by their official seal. It is, therefore, doubtful whether, in this district, the courts of the United States would deem such an attestation indispensable, especially as the laws of the state expressly provide that no such certification is necessary to the validity or sufficiency of any oath, affirmation, or affidavit. See "Act relative to oaths and affidavits," Rev. St. N. J. 740, § 2.

But, without dwelling upon this view, I am of the opinion that the defects alluded to are matters affecting the regularity of the proceedings, rather than the jurisdiction of the court. The books are full of cases to this effect, although it is admitted that there are some respectable authorities to the contrary. Jurisdiction does not depend upon the manner or the method of verifying either the petition or proofs of debt. *In re Simmons*, 10 N. B. R. 253; *In re Raynor*, 11 Blatchf. 43; *Ex parte Jewett*, 11 N. B. R. 443; *In re McKibben*, 12 N. B. R. 97; *In re Hannibel*, 15 N. B. R. 237; *In re Roche* v. *Fore*, 21 N. B. R. 461; *In re G. W. Gitchell*, 8 Ben. 258.

*In re Simmons, supra*, the late Judge Longyear, following his previous decision *In re McNaughton*, 8. N. B. R. 44, held that the jurisdiction of the court in nowise depended upon the verification of the petition; that the bankrupt act did not expressly require any verification in involuntary cases; and that a verification was only necessary under the rules and regulations of the supreme court in order to found upon the petition an order upon the debtor to show cause why he should not be adjudged a bankrupt.

*In re Raynor, supra*, the late Judge Woodruff distinctly intimates, by his whole course of reasoning, that the question of jurisdiction is not involved in the method of signing or the manner of authenticating the petition in bankruptcy, in invol-

untary cases, where the petition itself sets forth all the facts material to the claim made by the creditors to an adjudication.

In *Ex parte Jewett, supra,* Judge Lowell repudiates the idea that the jurisdiction of the court is involved in the proper verification of the petition, or of the claims of the petitioning creditors. He says: "The district court has jurisdiction in bankruptcy of every person, residing within the district, who owes $300 of provable debts; and when a paper which purports to be a petition in bankruptcy, and which alleges such residence and indebtedness, is filed, and an order of notice has been duly served, there is and can be no jurisdictional fact remaining, if the residence and indebtedness to the extent of $300 are admitted. The court may then proceed to allow or refuse amendments, or anything else proper for a court to do that has undoubted jurisdiction of the subject-matter and the parties."

In re *D. W. Gitchell, supra,* the same question arose before Judge Blatchford which is presented here, and was urged as a ground for dismissing the proceedings. It was an involuntary case. The petition was filed on the twenty-fifth of February, 1875, before the act of August 15, 1876, became a law. There was a default on the return of the rule to show cause. An adjudication was ordered, and an assignee regularly appointed, who proceeded to administer the estate. In the month of November following a creditor presented to the court a petition, praying that the adjudication of bankruptcy and the proceedings thereunder be vacated, for the reason that the original petition had been verified before a notary public, an officer not then qualified to perform such an act. The learned judge, speaking of the verification of the petition by a notary public, said: "This was irregular, but the irregularity did not affect the jurisdiction of the court. If, before the adjudication was entered, the irregularity had been brought to the notice of the court, it could and would have been remedied. But the question as to whether the petition is verified before a proper officer is one of practice and not of jurisdic-

tion. It is competent for the court to decide that it is verified before a proper officer, and when the court has so decided, and an order of adjudication has been entered, it is too late for the debtor, or for any creditor, to raise the question. An order of adjudication is a judgment, and is as effective as any other judgment to cure irregularities in practice which do not touch the jurisdiction of the court."

The serious consequences which would result from holding, in conformity with the petitioner's claim, that any irregularity or defect in the preliminary proceedings renders the adjudication void *ab initio*, are forcibly stated by Judge Woodruff in *In re Raynor, supra*. No title to real estate, acquired under bankruptcy proceedings, would be safe, no matter to what extent the bankrupt's property had been administered and distributed, or how many suits have been instituted and successfully maintained by the assignee to recover real or personal estate which the bankrupt had disposed of in fraud of his creditors. Everything would be liable to be disturbed and unsettled at any stage of the proceedings, if the court is bound to treat such irregularities and defects as jurisdictional facts.

In the present case more than three years elapsed from the date of adjudication before any question was raised. In the meantime the assignee, unconscious of risk, and presuming upon the regularity of the adjudication and the validity of his appointment, has been performing generally the duties of his position, compromising claims, bringing actions, and distributing assets.

Treating the adjudication as void, he becomes a tort-feasor, and is liable as a trespasser for the honest execution of a trust which the court obliged him to perform by virtue of his office.

Such considerations are not conclusive against the construction of the law contended for by the petitioner, but they afford very reasonable grounds for believing that the congress, in framing the act, never intended an interpretation should be given to it which would lead to such results.

It follows, from this view, that any irregularity in verifying the petition, or the debts of the petitioning creditors, may

be amended, *nunc pro tunc*, if any amendment is deemed necessary to make the proceedings regular.

The application to vacate and set aside the adjudication is denied.