**In re DAY.**

District Court, D. Maryland.

March 29, 1938.

Sherman P. Bowers, of Frederick, Md., for bankrupt.

Irving B. Grandberg, of Baltimore, Md., for trustee.

G. Van Velsor Wolf, of Baltimore, Md., for petitioner.

WILLIAM C. COLEMAN, District Judge.

The question presented for decision is whether an adjudication of bankruptcy growing out of a creditors' petition, that is, in an involuntary proceeding, should be rescinded at the instance of another creditor for reasons hereinafter explained.

The material facts concerning which there is no dispute are the following. On January 11, 1937, three creditors of Roland B. Day filed a petition, asking that he be adjudicated a bankrupt. This petition contained the usual jurisdictional allegations, and alleged as the act of bankruptcy upon which these petitioning creditors relied, in order to meet the requirements of the Bankruptcy Act, §§ 1 and 3, 11 U.S.C.A. §§ 1(20), and 21(b), that, "Day is insolvent, and that within four months next preceding the date of this petition" he "committed an act of bankruptcy, in that he did heretofore, to wit, on the 12th day of September, 1936, permit a judgment to be entered against him and unsatisfied." The usual show cause order was issued upon this petition, requiring Day to answer by January 24th. The subpœna directed to him was, however, returned non est. Nothing further happened in the proceeding until June 7, 1937, when Day, who had in the meantime returned from Nevada, where he had established a statutory residence for the purposes of divorce proceedings, filed a voluntary petition in bankruptcy, with annexed schedules, he being, at that time, as he claims, unaware that an involuntary petition was pending against him. Day was accordingly adjudicated a bankrupt June 7th, upon this voluntary petition, the case was referred to the referee, and on June 9th the involuntary petition was dismissed at the call of the bankruptcy docket, for want of prosecution. On July 8th, Day applied for his discharge, to which, however, objections and specifications in opposition thereto were filed by one of his creditors, but not one of the three who had filed the involuntary petition. On

August 24th these latter creditors filed another petition in this court, asking that: (1) This court's order of June 9th, dismissing the involuntary petition, be. rescinded; (2) the involuntary and voluntary proceedings be consolidated; and (3) Day be adjudicated a bankrupt as of January 11, 1937, the date on which the involuntary petition had been filed. A show cause order having been issued against Day pursuant to this latter petition, he answered, asking that it be dismissed. A hearing was had on November 19th, as a result of which this court, with the consent of Day's attorney, granted this second petition, consolidated both proceedings, rescinded the dismissal order of June 9th, and adjudicated Day a bankrupt as of January 11th. At the same time, this court denied the bankrupt's application for discharge under the voluntary petition, finding that at the hearing there had been disclosed facts sufficient to indicate that the bankrupt had not sustained the burden of proof, which had shifted to him as a result of a prima facie case having been made out against him by the objecting creditor, to the effect that he had failed to make proper disclosure of his assets and liabilities. 11 U.S.C.A. § 32(b).

As a result of the aforegoing, on December 3, 1937, the trustee in bankruptcy for Day's estate, who had been appointed on June 22, 1937, petitioned this court for a summary order, directed to Margaret E. Day, mother of the bankrupt and the petitioning creditor in the present proceeding, to turn over to the trustee a certain sum of money which she had received as a result of a sheriff's sale of the bankrupt's goods, and which the trustee claimed to be a voidable preference to her. On December 20th, Mrs. Day petitioned this court to be allowed to take an appeal from the order of November 19th, but this petition was not granted for failure to perfect the record. Thereupon, on December 24th, Mrs. Day filed an answer to the petition of the trustee just referred to, in which she alleged, among other things, that this court was without jurisdiction to adjudicate Day a bankrupt, as it had done as of January 11th. At the same time, Mrs. Day filed a petition to vacate, for the same reason, the order of November 19th, asserting that no act of bankruptcy had been alleged in the involuntary petition; that no subpoena had in fact been served upon her son; and that she had not been notified and was not represented by counsel at the hearing on November 19th, pursuant to which the order of the same day had been entered. A show cause order was then issued by this court, requiring the trustee in bankruptcy and the creditors who had filed the involuntary petition to answer this petition of Mrs. Day.

On January 5, 1938, the trustee in bankruptcy answered, asking that the petition be dismissed, alleging, among other things, that Mrs. Day had been present at the hearing on November 19th, and that she was in effect estopped from contesting the validity of this court's action incident thereto. The creditors who had filed the involuntary petition never answered Mrs. Day's petition. It, with the trustee's answer, was heard on January 14th. At this last hearing, the following further facts were developed, and are also undisputed: Between 1932 and 1934, Mrs. Day and her husband, parents of Roland B. Day, loaned money to him in various sums, totaling $2,500, evidenced by promissory notes. On July 1, 1935, Mr. and Mrs. Day consolidated their claims against their son, and took a confessed judgment note for the above mentioned amount, payable one year from the last mentioned date. On September 12, 1936, Mr. Day, Sr., because of his failing health (resulting in his death some two months later), had judgment confessed on the note. Thereafter, Mrs. Day, since her son's creditors were pressing him, in order to protect her interest in the note, caused execution to be levied, on January 8, 1937, on the confessed judgment, and received the net proceeds from the sheriff's sale of the son's property above referred to, after a prior absconding debtor's attachment had been satisfied.

If, as is contended on behalf of Mrs. Day, the original petition for the adjudication of her son as a bankrupt, that is to say, the involuntary petition, does not in fact allege the commission by the son of an act of bankruptcy as defined by the Bankruptcy Act, then that petition is jurisdictionally defective, and the adjudication thereon must be vacated.

We conclude that Mrs. Day's contention is correct. As we have seen, the involuntary petition alleges that Roland B. Day is insolvent, and that within four months next preceding the date of the petition he "committed an act of bankruptcy in that he, did heretofore, to wit, on the 12th day of September, 1936, per-

mit a judgment to be entered against him and unsatisfied." That part of the Bankruptcy Act upon which the petitioning creditors rely is section 3(a)(4), 11 U.S.C.A. § 21(a)(4), which defines one of the six acts of bankruptcy as consisting of a person having "suffered, or permitted, while insolvent, any creditor to obtain through legal proceedings any levy, attachment, *judgment*, or other lien, and not having vacated or discharged the same within thirty days from the date such levy, attachment, *judgment*, or other lien was obtained." (Italics inserted.)

It is to be noted that the petition does not allege, in conformity with the statute, that the judgment was obtained against Day "*while* insolvent," but merely that he "*is* insolvent." While such omission may, of itself, be sufficient to make the petition fatally defective, we prefer to rest our conclusion on more substantial grounds. It is well established that, in order to constitute an act of bankruptcy within the meaning of the definition just quoted, a lien must be created. A judgment alone, which does not carry with it a lien, is not sufficient. In other words, a petition for an adjudication which relies upon this provision of the law must, in order to avoid being jurisdictionally defective, allege that a lien has been created. See In re Flushing Queensboro Laundry, 2 Cir., 90 F.2d 601; Elkay Reflector Corporation v. Savory, 2 Cir., 57 F.2d 161; In re Hollywood Land & Water Company, D.C., 41 F.2d 778; Weitzel Flooring Corp. v. Getz, 3 Cir., 31 F.2d 930; In re Summit, D.C., 10 F.Supp. 495; In re New Lots Sash & Door Corp., D.C., 3 F.Supp. 570; Gilbert's Collier on Bankruptcy, 4th Ed. § 159. The petition in the present case contains no allegation that any lien was created. Nor could such have been the case, because in Maryland judgments create liens only on real property and leasehold interests. See Maryland Code, art. 26, § 19. There is no claim that Day owned such property at the time the judgment of September 12th was obtained, or, in fact, at any other time. No such property is listed by him in the schedules which were filed by him subsequently, with his voluntary petition.

Because of this clear failure to disclose in the petition the commission of any act of bankruptcy, the petition is jurisdictionally defective. In re Diamond

Fuel Company, 2 Cir., 283 F. 108; In re Parker, 7 Cir., 283 F. 404; In re D. F. Herlehy Company, D.C., 247 F. 369. Such jurisdictional defect is sufficient ground for vacating the adjudication. In re Niagara Contracting Company, D.C., 127 F. 782; Finn v. Carolina Portland Cement Company, 5 Cir., 232 F. 815. In fact, it has been held, where such defect appears affirmatively from the pleadings, the decree of adjudication is a nullity. See In re New York Tunnel Company, 2 Cir., 166 F. 284; In re D. F. Herlehy Company, supra.

The next inquiry is whether the present petitioner, Mrs. Day, mother of the alleged bankrupt, has the right to raise this question at the present time. We conclude that she has. She is an attaching creditor, having a provable claim against her son. Such creditors, although generally precluded by the adjudication, may, nevertheless, if not estopped or guilty of laches, attack the adjudication on the ground of lack of jurisdiction. In re Donnelly & Hughes, 3 Cir., 5 F. 783; In re Columbia Real Estate Company, 7 Cir., 112 F. 643; In re Niagara Contracting Company, supra; Altonwood Park Company v. Gwynne, 2 Cir., 160 F. 448; In re New England Breeders' Club, 1 Cir., 169 F. 586. The same is true, if the petition be a voluntary one. In re Scott, D.C., 111 F. 144; In re Garneau, 7 Cir., 127 F. 677; In re American & British Manufacturing Company, D.C., 300 F. 839; Chicago Bank of Commerce v. Carter, 8 Cir., 61 F.2d 986; In re Ettinger, 2 Cir., 76 F.2d 741. Indeed, it is the duty of the bankruptcy court, sua sponte, to dismiss the petition at any stage of the proceedings, even after adjudication, where it is clear to the court that the petition is jurisdictionally defective. In re Columbia Real Estate Company, supra; In re Garneau, supra; In re Finn v. Carolina Portland Cement Company, supra.

Nor is the rule which prohibits the vacating of judgments in a term subsequent to that in which they were entered applicable to the present case, since this court, sitting in bankruptcy, has no separate terms, but sits continuously. See Wayne United Gas Company v. Owens-Illinois Glass Company, 300 U.S. 131, 57 S.Ct. 382, 81 L.Ed. 557; Sandusky v. First National Bank of Indianapolis, 23 Wall. 289, 23 L.Ed. 155; Freed v. Central Trust

Company, 7 Cir., 215 F. 873, 876; In re Rochester Sanitarium & Baths Company, 2 Cir., 222 F. 22, 26.

▆ Assuming, without deciding, that an amendment to the petition might be permitted within the discretion of the court (see Armstrong v. Fernandez, 208 U.S. 324, 28 S.Ct. 419, 52 L.Ed. 514), such would not cure the situation, because, (1) the judgment referred to is, as already explained, inherently incapable of constituting an act of bankruptcy; and (2) no act of bankruptcy could, in fact, be alleged as a basis for an adjudication at a date even as early as the date of adjudication under the voluntary petition of the bankrupt, filed June 7, 1937, because an amendment could only become effective as of the date of application therefor, that is to say, as of the present time, and a fortiori could not relate back to the date of the filing of the original or involuntary petition. See In re Louisell Lumber Company, 5 Cir., 209 F. 784; In re Condon, 2 Cir., 209 F. 800; Hovland v. Farmers' State Bank, 8 Cir., 10 F.2d 478; In re Hollywood Land Company, supra.

▆ Finally, in reply to the argument that the present petition to vacate the adjudication should be denied because of its lateness, suffice it to say that we find no laches, in the light of all the circumstances. The petitioner is the mother of the bankrupt, and, although she alleges, and it is not contradicted, that she did not personally receive notice of the hearing on November 19, 1937, she did in fact attend. However, she was not then represented by counsel, and did not testify or otherwise have any part in the proceedings. The present petition on her behalf was filed within thirty-five days following the hearing, and the order of this court which is the basis of her complaint. There is no evidence of any collusion between her and her son, nor are there other circumstances which appear to militate against according her the right to which she is substantively entitled, for the reasons already fully set forth.

In view of the conclusion here reached, it becomes unnecessary to pass upon other grounds which were urged at the hearing in support of a like conclusion, as, for example, that, since the subpœna issued pursuant to the involuntary petition has never been served upon the alleged bankrupt, this court is without jurisdiction to adjudicate him under that petition, even though he later appeared and consented to such adjudication.

▆ One further matter remains to be considered, and that is, Day's application for a discharge, filed July 8, 1937, as a result of his voluntary petition. This application was, as we have seen, denied on November 19, 1937, as a result of objections thereto. Generally speaking, a denial of an application for discharge, rendered upon the merits, is res judicata where there is a subsequent application for a discharge in the same proceedings. See In re Brockway, C.C., 23 F. 583; In re Royal, D.C., 113 F. 140. However, a court of bankruptcy has jurisdiction to grant a rehearing of an application for discharge where the first hearing resulted in a denial of the discharge, a petition for such rehearing being addressed to the discretion of the court, and being presumably designed to enable the court to correct patent errors. In re Slohm, D.C., 11 F.Supp. 928. We conclude, therefore, especially in view of the different aspect which we now take with respect to the matter of Day's adjudication, that, upon an appropriate petition, the question of his discharge may be reopened. His original application for discharge was filed within the statutory period, namely, twelve months. 11 U.S.C.A. § 32. Any petition for a reopening of the question, while apparently not controlled by any express provision of the Bankruptcy Act, should, nevertheless, be seasonably made. Otherwise, it will not be entertained.

Summarizing, therefore, our conclusions, they are as follows: (1) The order adjudicating Day a bankrupt as of January 11, 1937, must be rescinded, and the involuntary petition of that date dismissed; (2) his adjudication under his voluntary petition of June 7, 1937, must be reinstated; and (3) the matter of his discharge, which was denied on November 19, 1937, will be reconsidered on a date to be hereafter assigned, provided an appropriate petition for such reconsideration is filed on his behalf within ten days from the date of the signing of an order, herein, which will be done in conformity with these conclusions.